UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN VIRIRI, on behalf of himself and
others similarly situated,

                              Plaintiff,

        v.

WHITE PLAINS HOSPITAL MEDICAL
CENTER,

                              Defendant.

No. 16-CV-2348 (KMK)

OPINION & ORDER

Appearances:

Todd J. Krakower, Esq.
Erika Minerowicz, Esq.
Krakower DiChiara LLC
Park Ridge, NJ
*Counsel for Plaintiff*

Andrew L. Zwerling, Esq.
Salvatore Puccio, Esq.
Michael J. Keane, Jr., Esq.
Garfunkel Wild, P.C.
Great Neck, NY
*Counsel for Defendant*

KENNETH M. KARAS, District Judge:

        Plaintiff Brian Viriri brings this Action against Defendant White Plains Hospital Medical

Center, individually and on behalf of others similarly situated, alleging that Defendant owes him

and others unpaid and overtime wages pursuant to the Fair Labor Standards Act (the "FLSA"),

29 U.S.C. § 201 et seq., the New York Minimum Wage Act, N.Y. Labor Law § 650 et seq., and

the supporting regulations of the New York State Department of Labor.  (*See* Am. Compl. (Dkt.

No. 11).)  Before the Court is Plaintiff's Motion for Conditional Collective Certification.  (*See* Dkt. No. 28.)  For the reasons to follow, the Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the Amended Complaint and the supporting declarations of Plaintiff.

Defendant is a domestic, not-for-profit corporation in Westchester County, New York, that operates as a healthcare provider.  (*See* Am. Compl. ¶¶ 8–9.)  At all relevant times, Defendant was and continues to be an employer engaged in commerce within the meaning of the FLSA and the New York Minimum Wage Act.  (*See id.* ¶ 13.)  From 2009 until approximately August 2013, Plaintiff was employed by Defendant as a registered nurse in the medical surgical unit.  (*See id.* ¶ 15; Decl. of Brian Viriri ("Viriri Decl.") ¶ 1 (Dkt. No. 30).)  Plaintiff also served as a registered nurse in Defendant's operating room from December 2014 until July 13, 2015.  (*See* Am. Compl. ¶ 15.)

While he worked in the medical surgical unit, Plaintiff and other nurses in the medical surgical unit were compensated on an hourly basis.  (*See id.* ¶ 33; Viriri Decl. ¶ 5.)  Nurses were regularly scheduled to work three to four 12-hour shifts per week.  (*See* Am. Compl. ¶ 43; Viriri Decl. ¶ 11.)  Those shifts ran from either 7:00 AM to 7:15 PM, or from 7:00 PM to 7:15 AM. (*See* Am. Compl. ¶ 42; Viriri Decl. ¶ 10.)  Nurses were typically scheduled to work three 12-hour shifts each week, but one week each month, they were required to work four 12-hour shifts. (*See* Am. Compl. ¶¶ 44–45; Viriri Decl. ¶¶ 12–13.)  Due to short staffing, however, each year, Plaintiff worked six additional weeks with four 12-hour shifts.  (*See* Am. Compl. ¶ 46.)

Plaintiff alleges that although the nurses were paid on an hourly basis pursuant to the predetermined work schedule, (*see id.* ¶ 38), they were required to arrive at least 15 minutes before their scheduled start time, (*see id.* ¶ 48; Viriri Decl. ¶ 14), and were regularly required to work one to two hours after their shift ended, (*see* Am. Compl. ¶ 52; Viriri Decl. ¶ 16). Plaintiff and the other nurses were not allowed to leave work until they located the incoming nurse and discussed each patient's status with that nurse. (*See* Am. Compl. ¶ 54; Viriri Decl. ¶ 17.) Although the nurses worked additional hours beyond the hours set forth in the schedule, Defendant did not compensate Plaintiff and the other nurses for that time. (*See* Am. Compl. ¶ 56; Viriri Decl. ¶ 19.) Moreover, although the nurses regularly worked more than 40 hours per week, (*see* Am. Compl. ¶ 57; Viriri Decl. ¶ 18), Defendant did not pay Plaintiff or the other nurses one-and-a-half times their regular rate of pay for that overtime, (*see* Am. Compl. ¶ 62; Viriri Decl. ¶ 20). Plaintiff alleges that Defendant's failure to pay the nurses their statutory wages was knowing. (*See* Am. Compl. ¶ 63.)

B.  Procedural History

Plaintiff filed his Complaint on March 30, 2016. (*See* Dkt. No. 1.) After Defendant sought leave to file a motion to dismiss, (*see* Dkt. No. 8), Plaintiff requested leave to file an Amended Complaint, (*see* Dkt. No. 9). Leave was granted, (*see* Dkt. No. 10), and Plaintiff filed his Amended Complaint on June 30, 2016, (*see* Dkt. No. 11). Defendant again sought leave to file a motion to dismiss, (*see* Dkt. No. 12), but after a conference before the Court on September 21, 2016, (*see* Dkt. (minute entry for Sept. 21, 2016)), Defendant decided not to pursue the motion, (*see* Dkt. No. 19). A case management order was thereafter entered. (*See* Dkt. No. 22.) On October 19, 2016, Defendant filed its Answer. (*See* Dkt. No. 27.)

On October 20, 2016, Plaintiff filed its Motion for Conditional Collective Certification, seeking an order conditionally certifying its proposed FLSA collective action. (*See* Dkt. No. 28.) In addition to conditional certification, Plaintiff requests that the Court approve the content and manner of the notice, and that the Court equitably toll the statute of limitations for the class members. (*See* Mem. of Law in Supp. of Pl.'s Mot. for Conditional Collective Certification ("Pl.'s Mem.") (Dkt. No. 31).) Defendant filed its opposition on November 14, 2016, (*see* Dkt. No. 32), and Plaintiff filed his reply on November 21, 2016, (*see* Dkt. No. 33).

## II. Discussion

### A. FLSA Conditional Certification

#### 1. Standard for Conditional Certification

The FLSA provides that an employee whose rights under the FLSA were violated may file an action in any federal or state court of competent jurisdiction "for and in behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Although the FLSA does not require them to do so, "district courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs." *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations and internal quotation marks omitted).

The Second Circuit has endorsed "a two step-method of certification in an opt-in collective action under the FLSA." *Amador v. Morgan Stanley & Co.*, No. 11-CV-4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (internal quotation marks omitted). First, the district court must make "an initial determination and send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* (some internal quotation marks omitted). "Once a court conditionally certifies a

collective action, it may then facilitate notice to all of the putative class members by approving a notice form." *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012). After discovery is completed, "if it appears that some or all members of a conditionally certified class are not similarly situated," a "defendant may move to challenge certification, at which point a court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated." *Id.* at 320–21.

This case comes before the Court at the first phase, which means Plaintiff need only make a "modest factual showing" that "[he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). Although this "modest factual showing" cannot "be satisfied simply by unsupported assertions," it remains a "low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.* (internal quotation marks omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Because "the court applies a fairly lenient standard," courts "typically grant[] conditional certification." *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-CV-322, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009) (internal quotation marks omitted).

Importantly, at this stage, "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Amador*, 2013 WL 494020, at *3 (internal quotation marks omitted). "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification," *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007), and even if "dates of

employment and hours worked are unique to each employee," that "does not necessarily create dissimilarity under the FLSA," *Hallissey*, 2008 WL 465112, at *2.

### 2. Analysis

Plaintiff has moved for conditional certification only with respect to the FLSA claims, and has not asked for any certification or other class recognition with respect to his claims under state law. FLSA claims are governed by a two-year or three-year statute of limitations, depending on whether the violations were willful, *see* 29 U.S.C. § 255(a), and in a collective action suit, absent tolling, the statute of limitations continues to run for each potential plaintiff until the date the individual files a consent to join the lawsuit, *see Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014). Thus, assuming Plaintiff is successful in his argument that the statute of limitations for potential opt-in plaintiffs should be tolled as of the date the Motion was filed, the class of potential opt-in plaintiffs would be all registered nurses working in the medical surgical unit at Defendant from October 20, 2013 until October 20, 2016.

Defendant raises a number of arguments for why Plaintiff's Motion should be denied. The Court will address each in turn.

### a. Conclusory Allegations

Defendant first argues that conditional certification is inappropriate because Plaintiff has relied solely on conclusory allegations, based on his "observations" and "understandings," an approach that, Defendant contends, has been rejected in other cases in the Second Circuit. (*See* Mem. of Law in Opp'n to Pl.'s Mot. for Conditional Collective Certification ("Def.'s Opp'n") 7–8 (Dkt. No. 32).)

In support his Motion, Plaintiff submitted a declaration restating much of the information alleged in the Amended Complaint. (*See* Viriri Decl.) There, Plaintiff affirmed that "based on

conversations with other registered nurses in the medical surgical unit as well as personal observations," he and the other nurses were not compensated for all hours worked and were not paid overtime.  (*Id.* ¶¶ 3–4.)  Plaintiff specifically testified that, consistent with the allegations in the Amended Complaint, all nurses in the medical surgical unit were assigned to work a predetermined schedule each week, consisting of three to four 12-hour shifts, were required to arrive early and stay late, but were compensated only for the hours listed on the predetermined schedule.  (*See id.* ¶¶ 10–18.)  When Plaintiff submitted his reply papers, he appended a new declaration that clarified that he had spoken with two other nurses, Alyssa Mahany and Kristina Garcia, who both confirmed that they and other nurses were subjected to the same unlawful pay practices alleged in the Amended Complaint and relayed in the first declaration.  (*See* Reply Decl. of Brian Viriri ("Viriri Reply Decl.") ¶¶ 2–4 (Dkt. No. 34).)

Many of the cases cited by Defendant in support on this issue are inapposite.  *See, e.g.*, *Romero v. H.B. Auto. Grp., Inc.*, No. 11-CV-386, 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012) (denying certification where the plaintiff had access to the defendants' pay records, but did "not make any showing about a widespread failure to pay minimum wage based on [those] pay records," instead relying solely on "allegations made on knowledge and belief"); *Khan v. Airport Mgmt. Servs., LLC*, No. 10-CV-7735, 2011 WL 5597371, at *4–5 (S.D.N.Y. Nov. 16, 2011) (denying certification where, although the defendants did not contest that the plaintiff worked more than 40 hours without overtime pay, the plaintiff had not provided anything beyond conclusory allegations that other individuals in his position were improperly classified as managers); *Morales v. Plantworks, Inc.*, No. 05-CV-2349, 2006 WL 278154, at *2–3 (S.D.N.Y. Feb. 2, 2006) (denying certification where the plaintiffs offered no sworn declarations and made only the conclusory allegations in the complaint that there were over 20 current and former

employees who were similarly denied minimum wage and overtime compensation); *Levinson v. Primedia Inc.*, No. 02-CV-2222, 2003 WL 22533428, at *2 (S.D.N.Y. Nov. 6, 2003) (denying certification where the plaintiffs offered only conclusory allegations that other individuals were similarly misclassified as independent contractors).  None of these cases discusses a scenario where, as here, the plaintiff alleged a specific policy of compensating individuals for time scheduled rather than time worked, and where the allegations are limited to the subgroup to which the plaintiff was assigned at one particular location.

Defendant has, however, cited other cases that are more apt.  *See, e.g.*, *Lujan v. Cabana Mgmt., Inc.*, No. 10-CV-755, 2011 WL 317984 (E.D.N.Y. Feb. 1, 2011); *Cuzco v. Orion Builders, Inc.*, 477 F. Supp. 2d 628 (S.D.N.Y. 2007).  Defendant focuses in particular on *Jin Yun Zheng v. Good Fortune Supermarket Grp. (USA), Inc.*, No. 13-CV-60, 2013 WL 5132023 (E.D.N.Y. Sept. 12, 2013).  There, the district court denied a motion for conditional certification where the plaintiff had offered only her own declaration in support, in which she claimed that she and other store clerks were victims of a "common policy or plan that violated the law," that she "observed that other supermarket clerks did work that was the same or similar to the work she did," that other clerks "were similarly compensated and worked similar schedules," and that "other supermarket clerks were subject to the same time shaving policy."  *Id.* at *2 (alteration and internal quotation marks omitted).  The court held that such conclusory allegations were insufficient because the plaintiff did not identify the employees who were similarly situated, nor did she explain the basis for her observations.  *See id.* at *5.  Instead, the plaintiff "merely restate[d] her conclusory factual allegations in a variety of forms."  *Id.*

Here, the Court is not persuaded that Plaintiff's allegations are so bare and conclusory as to fail to meet the "modest" burden at conditional certification.  While Plaintiff has submitted

only his own declarations, which identify only two other employees who have shared information about Defendant's employment practices, the allegations levied by Plaintiff are of a different variety from those raised in the cases cited by Defendant.  In *Zheng*, the plaintiff alleged that the defendants deducted one hour of pay each day for lunch, but that she was only actually afforded 30 minutes for lunch.  *See id.* at *1.  She also alleged that the defendants failed to provide appropriate paystubs or to provide written notice of her regular pay rate, her overtime hours, and the hours she worked.  *See id.*  The defendant there admitted that it deducted one hour for lunch, but insisted that the plaintiff had, in fact, always taken an hour for lunch.  *See id.* at *3.  Here, by contrast, Plaintiff does not allege simply that he was underpaid for the work he performed; he has alleged the specific manner and operation by which such underpayment was effected.  According to Plaintiff, Defendant created a weekly schedule setting forth the 12-hour shifts for each nurse, and compensated nurses based on that schedule as opposed to the amount of hours actually worked, which regularly exceeded the number of hours scheduled.  (*See* Am. Compl. ¶¶ 38–41; Viriri Decl. ¶¶ 6–8.)  While the Court agrees that Plaintiff could have supplemented his declaration with more details about the alleged policy, the failure to provide that detail is not sufficient to defeat conditional certification here.  Plaintiff's burden at this stage is "modest," and while Defendant may adduce evidence later in the litigation (perhaps in support of a motion for decertification) showing that Plaintiff's experience was unique, there is sufficient evidence, at this stage, that the 12-hour shift schedule and compensation structure was not limited to Plaintiff.  This is sufficient to warrant conditional certification.  *See Ack v. Manhattan Beer Distribs., Inc.*, No. 11-CV-5582, 2012 WL 1710985, at *3 (E.D.N.Y. May 15, 2012) (rejecting, on a motion for collective certification, the defendants' argument that the "plaintiffs' experiences were limited to the unique practices of two . . . supervisors," saying that the

9

plaintiffs had adequately alleged a company-wide policy of denying overtime (alteration and internal quotation marks omitted)).

b.  Common Policy

Defendant next argues that Plaintiff has failed to set forth a policy or practice of Defendant that is in violation of the FLSA.  (*See* Def.'s Opp'n 9.)  This contention lacks merit. At this stage, Plaintiff need only provide some evidence that he and others "together were victims of a common policy or plan that violated the law."  *Myers*, 624 F.3d at 555 (internal quotation marks omitted).  The allegations in the Amended Complaint and Plaintiff's declarations set forth that Plaintiff and the potential opt-in plaintiffs, despite working additional time before and after their scheduled shifts, were compensated solely on the hours set forth in the predetermined schedule.  (*See* Am. Compl. ¶¶ 38–40; Viriri Decl. ¶¶ 6–8.)  Plaintiff has thus alleged a policy of Defendant of not compensating employees for actual time worked, but only for time reflected in the predetermined schedules.  These types of allegations are sufficient to meet Plaintiff's burden to show that he and others were victims of a common policy or plan in violation of the FLSA.  *See Elamrani v. Henry Limousine, Ltd.*, No. 15-CV-2050, 2016 WL 5477590, at *1, *3 (E.D.N.Y. Sept. 28, 2016) (finding an allegation that the plaintiff "was paid the same weekly salary regardless of the number of hours he worked each week" was sufficient to warrant conditional certification); *Gjurovich v. Emmanuel's Marketplace, Inc.*, 282 F. Supp. 2d 101, 104 (S.D.N.Y. 2003) (finding an allegation that the plaintiff "was paid the same weekly salary regardless of the number of hours he was required to work in excess of forty during any given week" was sufficient to warrant conditional certification).  Accordingly, certification cannot be denied on this basis.

<u>c.  Similarly Situated</u>

Defendant additionally argues that the Motion must be denied because Plaintiff has not established that he is similarly situated to the other registered nurses.  (*See* Def.'s Opp'n 10.) Defendant's first point here is largely a reiteration of its first argument, namely, that Plaintiff's conclusory allegations regarding his individual circumstances are insufficient to justify conditional certification.  (*See id.*)  Again, the cases cited by Defendant here are inapposite.  In *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504 (S.D.N.Y. 2010), the court denied conditional certification because, among other things, the declarations offered by the plaintiffs did not establish that they had been paid below minimum wage, *see id.* at 509–10, an issue not present here as Plaintiff has made clear the manner in and extent to which he and others were not adequately compensated.  The court also noted that the plaintiffs failed to provide information about other individuals who were purportedly observed receiving below-minimum-wage pay, saying that there was no information about "who they [were], what their base salary [was], [and] whether they [were] delivery persons or even tipped employees."  *Id.* at 510.  Again, those issues are not present here—regardless of what the other nurses' rates-of-pay were, they were entitled, according to Plaintiff, to full payment for hours worked and for overtime payment for hours worked in excess of 40 hours per week.  And Plaintiff has not sought to include any members in the proposed class except the nurses working in the medical surgical unit, and thus the titles or job descriptions of the potential opt-in plaintiffs are irrelevant.

*Eng-Hatcher v. Sprint Nextel Corp.*, No. 07-CV-7350, 2009 WL 7311383 (S.D.N.Y. Nov. 13, 2009), is also distinguishable, as there, the court denied a plaintiff's attempt to conditionally certify a nationwide class on the basis of only her individualized experience and the experience of other employees at the same store; the court did not consider whether a "much

more modest class composition" would have passed muster. *See id.* at *3–5. And in *Monger v. Cactus Salon & Spa's LLC*, No. 08-CV-1817, 2009 WL 1916386 (E.D.N.Y. July 6, 2009), the court denied conditional certification with respect to employees at stores other than where the plaintiffs worked, but granted conditional certification with respect to the store where the plaintiffs all worked together and could testify about the wage practices. *See id.* at *2. Here, Plaintiff has not sought to conditionally certify a class for any locations other than White Plains Hospital Medical Center, where he personally witnessed and was affected by the allegedly illegal wage practices of Defendant. These cases are therefore inapplicable.

Defendant supplements its broad argument, however, with an additional observation— Plaintiff was not employed at Defendant during the proposed class period. (*See* Def.'s Opp'n 11–13.) As the beneficiary of several tolling agreements, (*see* Am. Compl. ¶¶ 64–68), Plaintiff's claim for unpaid or underpaid wages extends further back in time than those of the potential opt-in plaintiffs, who may only be able to recover wages going back, at the earliest, to October 2013, after Plaintiff had already left his position as a registered nurse in the medical surgical unit, (*see* Am. Compl. ¶ 15; Viriri Decl. ¶ 1). There is thus a question as to whether Plaintiff is "similarly situated" to the proposed class members, and whether his personal knowledge of alleged violations that occurred prior to the class period is sufficient to conditionally certify a class.

With respect to whether Plaintiff is similarly situated to the proposed class members, courts considering whether a plaintiff is similarly situated to other employees look to "the (1) disparate factual and employment settings of the individual plaintiffs; (2) defenses available to [the] defendants which appear to be individual to each plaintiff; and (3) fairness and procedural considerations counseling for or against notification to the class." *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 352 (E.D.N.Y. 2008) (internal quotation marks omitted). The issue of

Plaintiff's term of employment relates primarily to the first category: the disparate factual and employment settings of the individual plaintiffs.

As an initial matter, Defendant has not offered any case law suggesting that a modest temporal gap between the plaintiff's employment and the employment period of other class members prohibits or even counsels against conditional certification.  (*See generally* Def.'s Opp'n 11–13.)  This dearth of authority is unsurprising.  It is always the case in an FLSA collective action that, absent equitable tolling, the representative plaintiff who initially brings the action will have a different period of recoverable wages from the opt-in plaintiffs, who can recover, at most, only wages from three years prior to their opting in.  To the extent such a disparity has never been held, to the Court's knowledge, sufficient to deny conditional certification, it makes little sense to hold that simply because there is *no* overlap between the representative plaintiff's recoverable wages and the opt-in plaintiff's recoverable wages that conditional certification is inappropriate.  In both circumstances, the representative plaintiff will be required to litigate and present evidence regarding a period of time of which he has no interest and, perhaps, no personal knowledge.  But while such a divergence of interest may have implications in the Rule 23 class certification context, *see In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) ("To satisfy Rule 23(a)(4), the named plaintiffs must possess the same interests and suffer the same injuries as the class members." (alterations and internal quotation marks omitted)), Plaintiff here must establish only that he is similarly situated to the potential opt-in plaintiffs, not that he and the "potential opt-in plaintiffs [are] identical in all respects," *Salomon v. Adderley Indus., Inc.*, 847 F. Supp. 2d 561, 565 (S.D.N.Y. 2012) (alteration and internal quotation marks omitted).  Moreover, there is no reason to infer, at this stage, that Plaintiff's claim will implicate "disparate factual and

employment settings" from the potential opt-in plaintiffs, *see Laroque*, 557 F. Supp. 2d at 352, as the only difference identified by Defendant is the period of employment, not the terms or conditions of that employment, *see Hallissey*, 2008 WL 465112, at *2 (holding that a disparity in "dates of employment" or "hours worked" does "not necessarily create dissimilarity under the FLSA"); *Mentor v. Imperial Parking Sys., Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y. 2007) (granting conditional certification even though the "dates of employment" were unique to each employee).

 A different question arises with respect to Defendant's claim that the fact that Plaintiff was not employed during the proposed class period undercuts any reliance on Plaintiff's declarations in support of the Motions, as Plaintiff does not have firsthand knowledge of any violations occurring during the relevant period.  (*See* Def.'s Opp'n 11–12.)  Indeed, courts have not hesitated to deny conditional certification where the plaintiff seeks to certify a class comprising employees working at other store locations of which the plaintiff has no personal knowledge and cannot therefore testify as to the employment practices.  *See, e.g.*, *Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 458 (E.D.N.Y. 2014) (denying conditional certification of a statewide class because the plaintiff's "lack of knowledge of any pay violations at other New York stores[] do[es] not warrant a finding that [sales associates] at all New York stores are similarly situated to the [p]laintiffs"); *Trinidad v. Pret A Manger (USA) Ltd.*, 962 F. Supp. 2d 545, 558 (S.D.N.Y. 2013) (denying conditional certification of a citywide class because the plaintiffs had "not demonstrated across all locations a uniform policy of failure to pay overtime compensation"); *Laroque*, 557 F. Supp. 2d at 355 (denying conditional certification of a class including employees at other locations because the plaintiffs' support for the class was merely "a hearsay statement that ha[d] been rebutted by the declarant").

Other courts, however, have recognized that the lack of personal knowledge is not fatal where the plaintiff has offered testimony indicating a widespread policy or pattern of management. *See, e.g.*, *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 563 (S.D.N.Y. 2015) (granting conditional certification of a class including employees at other locations because "evidentiary submissions . . . strongly suggest[ed] uniformity in the management and operation of [employees] across all four [defendant] locations"); *Guo Qing Wang v. H.B. Rest. Grp., Inc.*, No. 14-CV-813, 2014 WL 5055813, at *4 (S.D.N.Y. Oct. 7, 2014) (certifying a collective action based on the plaintiff's "observations and . . . conversations with his coworkers"); *Juarez v. 449 Rest., Inc.*, 29 F. Supp. 3d 363, 371 (S.D.N.Y. 2014) (granting conditional certification of a class including employees at other locations because there was evidence that the "three [locations] were run as an integrated enterprise," which could "reasonably imply that they had uniform wage-and-hour policies"); *Cheng Chung Liang v. J.C. Broadway Rest., Inc.*, No. 12-CV-1054, 2013 WL 2284882, at *1 (S.D.N.Y. May 23, 2013) (granting conditional certification of a class including employees at other locations because the testimony "suggest[ed] that [the plaintiff's manager] may have been the source of the restaurant's allegedly illegal labor practices and, thus, there [was] some reason to believe that th[o]se policies may have been instituted at the other establishments she owned").

Plaintiff's claim here is more in line with the latter set of cases.  As discussed above, the allegation is not that Plaintiff's timecards were periodically shaved or changed without his consent, or that his individual rate-of-pay was in violation of minimum wage guidelines. Instead, Plaintiff's claim is that Defendant had a policy of creating a schedule of work for nurses each week, and then compensating nurses on the basis of the hours set forth in that schedule, and not on the basis of the hours actually worked by the nurses, which routinely exceeded the

15

number of hours originally scheduled.  Moreover, Plaintiff claims to have talked to other nurses in the medical surgical unit who confirmed that the same policy has been applied to them.  (*See* Viriri Reply Decl. ¶¶ 2–4.)  There is no suggestion by Defendant that Plaintiff was subject to a different compensation scheme from other nurses in the medical surgical unit, or that Plaintiff was part of some subset of nurses who reported to a different supervisor responsible for their compensation.  Plaintiff will of course bear the burden at the decertification stage (should Defendant choose to move for decertification) of setting forth evidence that all of the opt-in plaintiffs suffered the same wage violations alleged by Plaintiff.  But at this stage, where the plaintiff must make only a "modest factual showing" that "there may be other similarly situated workers," *Liang*, 2013 WL 2284882, at *1 (internal quotation marks omitted), the Court is satisfied that Plaintiff has met that burden.

### d.  Predominance of Individual Issues

Defendant's final argument against conditional certification is that individualized inquires within the proposed class would pervade.  (*See* Def.'s Opp'n 14.)  Defendant identifies two individualized issues that, it claims, counsel against conditional certification: (1) whether each nurse worked sufficient hours to warrant overtime compensation and whether each nurse was subject to the same schedule as Plaintiff, and (2) whether some of the nurses may be exempt from overtime under the FLSA.  (*See id.*)  The first of these is plainly insufficient—it is always the case in an FLSA overtime collective action that there will be some variation in the amount of overtime hours worked.  To hold that such variation is sufficient to deny conditional certification would be to effectively eliminate collective actions in all overtime suits.  *See Hallissey*, 2008 WL 465112, at *2 ("While . . . hours worked are unique to each employee, it does not necessarily create dissimilarity under the FLSA."); *Mentor*, 246 F.R.D. at 181 ("While . . . hours

worked are unique to each employee, [the] [p]laintiff has met his burden of making a modest factual showing sufficient to demonstrate that he and other employees together were victims of a common policy or plan that violated the law." (alterations and internal quotation marks omitted)).  Plaintiff has offered testimony that the other nurses were on the same schedule as him and were similarly required to stay early and work late without additional compensation.  If Defendant has compelling evidence to the contrary, it could have presented it on this Motion.  It did not, and there is therefore no basis upon which to infer that the slight disparities in hours worked that naturally arise in any FLSA collective action will be so dramatic here as to make certification inappropriate.

With respect to the applicability of any exemptions, Defendant is correct that such disparity can, in some circumstances, warrant denial of conditional certification.  (*See* Def.'s Opp'n 14 (citing *Diaz v. Elecs. Boutique of Am., Inc.*, No. 04-CV-840, 2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216 (D. Conn. 2003).)  But no such circumstances are present here.  In *Diaz*, the court denied conditional certification because one plaintiff, a manager, had alleged that he was misclassified as exempt, and the other plaintiff, a sales associate, claimed only that he had not been paid overtime wages for which he was undisputedly eligible.  2005 WL 2654270, at *3.  The court noted that in addition to the two plaintiffs being dissimilar to one another, the manager's claim for misclassification would "involve an analysis of daily duties and responsibilities," and such an analysis would have to be conducted with respect to "every individual" manager, and that those responsibilities would "vary in number and types of employees supervised and in types of stores managed."  *Id.* at *3–4.  In *Mike*, the plaintiff raised a misclassification claim based on the fact that the balance of his responsibilities were non-administrative, notwithstanding that the

17

company-wide job description included both administrative and non-administrative tasks.  *See* 274 F. Supp. 2d at 220.  Because the court concluded that "any other plaintiff would also have to present specific evidence of his or her daily tasks," *id.* at 221, conditional certification was not appropriate there.

Here, no such circumstances have been identified.  Plaintiff has not claimed that he was mistakenly classified as exempt.  And to the extent Defendant intends to assert as a defense that Plaintiff and others were exempt from overtime pay, there is no evidence suggesting that Plaintiff's job duties differed from that of any other nurse working in the same unit.  Where there are no differing job responsibilities among members of a proposed class, denial of conditional certification is not appropriate merely because of the possibility that the defendant may argue that the class members are exempt from overtime requirement.  *See, e.g.*, *Liang*, 2013 WL 2284882, at *2 (acknowledging that "[d]iffering job responsibilities are relevant to the analysis to the extent that these differences might trigger exceptions to the wage and hour laws for some workers but not others," but noting that the "[d]efendants ha[d] given no indication that the differing job responsibilities of [the employees] trigger[ed] any differing legal treatment"); *In re Penthouse Exec. Club Compensation Litig.*, No. 10-CV-1145, 2010 WL 4340255, at *3 (S.D.N.Y. Oct. 27, 2010) (rejecting the defendants' argument that conditional certification was inappropriate due to the possible exempt status of various class members because "the putative class would include individuals with the same job title, the same job responsibilities, and who all worked at a single adult entertainment club"); *cf. Pippins v. KPMG LLP*, No. 11-CV-377, 2012 WL 19379, at *8 (S.D.N.Y. Jan. 3, 2012) ("Where there is evidence that the duties of the job are largely defined by comprehensive corporate procedures and policies, district courts have routinely certified classes of employees challenging their classification as exempt, despite

arguments about individualized differences in job responsibilities." (alteration and internal quotation marks omitted)).

In short, Defendant's arguments regarding the possibility of individualized inquiries are the same arguments routinely rejected by courts in the Second Circuit in similar circumstances. As none of Defendant's other objections has merit, conditional certification is appropriate, and notice will be issued as set forth in this Opinion & Order.

B. Equitable Tolling

Plaintiff asks that because the statute of limitations for the potential opt-in plaintiffs normally continues to run until each plaintiff files a consent to join the lawsuit, the Court should exercise its discretion to equitably toll the statute of limitations. (*See* Pl.'s Mem. 13–14.) Although Plaintiff does not offer a date on which he believes the tolling should begin, the Court presumes, based on Plaintiff's arguments, that he is requesting that the statute of limitations be tolled for the time required to decide the pending Motion. (*See id.*) Defendant objects on the basis that there are no extraordinary circumstances that warrant the application of equitable tolling here. (*See* Def.'s Opp'n 15–18.)

In an FLSA collective action, "the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit." *Jackson*, 298 F.R.D. at 170. However, "[a] district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Id.*; *see also McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("[C]ourts have discretion to equitably toll the limitations period in

appropriate cases in order to avoid inequitable circumstances." (internal quotation marks omitted)).

"The most common circumstance where equitable tolling might apply to FLSA actions is where the defendant has concealed the existence of a cause of action from the plaintiffs . . . ." *Mark v. Gawker Media LLC*, No. 13-CV-4347, 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014).  Some courts have held, however, that in FLSA collective actions, the potential opt-in plaintiffs' claims may be tolled during the period the court takes to decide the conditional certification motion.  *See, e.g.*, *Jackson*, 298 F.R.D. at 171 ("The delay required to decide a motion may warrant equitable tolling."); *McGlone*, 867 F. Supp. 2d at 445 ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935, 2011 WL 844963, at *3 (E.D.N.Y. Mar. 8, 2011) ("Accordingly, in the interest of fairness, I find equitable tolling is warranted from the date [the] plaintiffs served their original certification motion . . . to the date [another judge] issued [a] stay . . . , and from the date [the] plaintiffs re-filed their certification motion . . . to . . . the date I granted it . . . .").  While no court in the Second Circuit has outright rejected the possibility of equitable tolling in such circumstances, several courts have declined to apply equitable tolling where the delay, in their view, was not of such a magnitude as to warrant tolling.  *See, e.g.*, *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (declining to apply equitable tolling where "less than seven months ha[d] passed since [the] plaintiffs filed their original motion for conditional certification in [another district], and less than five months ha[d] passed since [the] plaintiffs renewed their motion in [the Southern

District of New York]"); *Martin v. Sprint/United Mgmt. Co.*, No. 15-CV-5237, 2016 WL 30334, at \*16 (S.D.N.Y. Jan. 4, 2016) (declining to apply equitable tolling where "less than two and a half months ha[d] transpired since the filing of the [first amended complaint]"); *Mark*, 2014 WL 5557489, at \*2–3 (declining to apply equitable tolling where eleven months had passed since the filing of the motion for conditional certification, holding that "the time delay between the date [the] [p]laintiffs filed the motion and its resolution in [that] case was not extraordinary" (internal quotation marks omitted)).

Thus, the authority, while not split on the *potential* applicability of equitable tolling in this circumstance, is split on the practical application of equitable tolling. Here, the Motion was filed on October 20, 2016 and was fully briefed on November 21, 2016. There is thus a substantial gap between the time the Motion was fully submitted and the date of this decision, after which notice will be mailed out and potential opt-in plaintiffs will be made aware of their right to participate in this Action. This delay is longer than the delay in *Martin*, *see* 2016 WL 30334, at \*16, and similar to the delay in *Vasto*, *see* 2016 WL 2658172, at \*16. In light of the Court's "heavy docket[]," *McGlone*, 867 F. Supp. 2d at 445, and the relatively lengthy delay between the briefing on this Motion and the Court's decision, the Court finds that the circumstances here are sufficiently extraordinary to warrant equitable tolling from the date the Motion was fully briefed, but not from the date the Motion was filed, until the date of this Opinion & Order. While the Court appreciates that the delay comes through no fault of Defendant, that is no reason to penalize the potential opt-in plaintiffs for the workflow of the White Plains courthouse. Any additional issues relating to equitable tolling will be taken up at the appropriate time.

C.  Content of the Notice

Defendant raises a number of challenges to the content of the proposed notice of the pendency of the lawsuit (the "Proposed Notice").  The Court will address each in turn.

1.  Information Regarding Defendant's Position

Defendant first argues that the Proposed Notice, (*see* Decl. of Todd Krakower in Supp. of Pl.'s Mot. for Conditional Class Certification, Notice, and Equitable Tolling Ex. B ("Proposed Notice") (Dkt. No. 29)), should include more information about Defendant's position in the litigation, (*see* Def.'s Opp'n 19).  To that end, Defendant proposes the following language (additions are underlined):

> The Court has not made any determination as to the merits of Plaintiff's claims or your right to recover any sum of money from Defendant.  Defendant denies all claims against it in this lawsuit, maintains that it has paid all employees appropriately and lawfully, and that Plaintiff's suit is meritless.  Defendant denies that you are entitled to any of the damages, back pay, court costs, or attorney's fees sought in this lawsuit.  Further, Defendant plans to request that the Court decertify the collective action as soon as possible and/or dismiss the lawsuit, as they have a right to do.

(*Id.* at 20.)

Some courts have allowed revisions similar to the ones suggested by Defendant here. *See, e.g.*, *Martin*, 2016 WL 30334, at *17; *Enriquez v. Cherry Hill Market Corp.*, No. 10-CV-5616, 2012 WL 440691, at *4 (E.D.N.Y. Feb. 10, 2012).  But the basis of including additional language is to ensure "proportionality" in the notice.  *Hernandez v. Merrill Lynch & Co.*, No. 11-CV-8472, 2012 WL 1193836, at *5 (S.D.N.Y. Apr. 6, 2012).  The language proposed by Defendant is not proportional, as it goes beyond simply informing the potential opt-in plaintiffs of the status of the action and instead makes subtle but obvious efforts to dissuade the opt-in plaintiffs from joining.  The Court agrees, in line with other cases, that the language regarding the absence of any adjudication on the merits is appropriate, and also agrees that the potential

opt-in plaintiffs should be advised that Defendant has asserted compliance with the FLSA.  The

Proposed Notice will therefore be amended as follows, in place of the sentencing beginning

"Defendant denies all claims":

> Defendant denies all claims against it and maintains that it has complied with the FLSA.  Defendant denies that you are entitled to any of the damages, back pay, court costs, or attorney's fees sought.  The Court has not yet made any determination as to the merits of the claims or your right to recover any sum of money from Defendant.

### 2.  Information Regarding Plaintiff's Discovery Obligations and Costs

Defendant next objects that the Proposed Notice, which states that "[a] small percentage

of you may be subject to having to respond to discovery requests of the Defendants and possibly

be required to provide testimony," (Proposed Notice 3), should be amended to inform the

potential opt-in plaintiffs that they may need to respond to interrogatories, produce documents

and information, appear at a deposition, and otherwise participate in discovery, (*see* Def.'s

Opp'n 20).  Defendant also argues that the Proposed Notice should include language warning

that opt-in plaintiffs could be assessed costs if Defendant prevails in the litigation.  (*See id.* at

21.)

Defendant cites to *Hernandez v. Immortal Rise, Inc.*, No. 11-CV-4360, 2012 WL

4369746 (E.D.N.Y. Sept. 24, 2012), a largely unhelpful case, as there, the court denied the

defendants' request to include language referencing the payment of costs, noting that the weight

of authority is against such language, and included only the following language with respect to

discovery: "you may be asked to testify and provide information about the work you performed

for defendants in order to help the Court decide whether you are owed any money."  *Id.* at *7.

As this is the only case cited by Defendant regarding whether its proposed language should be

included—the other cases address only whether costs may be assessed against FLSA plaintiffs,

and not whether potential opt-in plaintiffs must be warned of that possibility—and as the Proposed Notice comports with *Hernandez*, there is no need to make any modifications to the Proposed Notice in this respect.

### 3.  Consent Forms Addressee

Next, Defendant argues that the potential opt-in plaintiffs should be told to send their consent forms directly to the Court instead of to Plaintiff's counsel, arguing that any instruction to the contrary would discourage opt-in plaintiffs from retaining their own counsel.  (*See* Def.'s Opp'n 21.)  While Defendant is correct that some courts have modified proposed FLSA notices in this respect, *see, e.g.*, *Diaz v. S & H Bondi's Dep't Store*, No. 10-CV-7676, 2012 WL 137460, at *8 (S.D.N.Y. Jan. 18, 2012); *Hallissey*, 2008 WL 465112, at *4, the "majority of courts" have directed opt-in plaintiffs to mail consent forms to the plaintiffs' counsel, *see Martin*, 2016 WL 30334, at *18 (collecting cases).  Where, as here, the notice makes clear that "opt-in plaintiffs can select their own counsel, there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel."  *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55, 60 (S.D.N.Y. 2009).  There is thus no need for the Court to fulfill the administrative task of collecting consent forms.

Defendant also contends that the statement, "your claim may lose value due the passage of time," (Proposed Notice 3), should be stricken because the "statement discourages persons from using their own counsel," (Def.'s Opp'n 21).  Defendant cites no authority on this point, and the Court sees nothing coercive about this language.  Accordingly, no revision is needed here.

### 4.  Information Regarding Named Plaintiff

Defendant contends that the Proposed Notice should be amended to include a brief description of the named Plaintiff "in order to give potential opt-in plaintiffs information as to whether they believe he is an appropriate representative and their agent." (*Id.* at 22.)  As Plaintiff points out, (*see* Reply Mem. of Law in Supp. of Pl.'s Mot. for Conditional Collective Certification 12–13 (Dkt. No. 33)), there is no authority for this position.  The Court does agree that the Proposed Notice should be amended to make clear that Brian Viriri is a former employee of Defendant, but no additional information is needed.

### 5.  "Legal Effect Of Not Filing The Consent Form"

Finally, Defendant argues that the language under Section 8 discussing the legal effect of a potential opt-in plaintiff's decision not to join the Action is threatening and must be "revised to ensure accuracy under the laws and a fuller explanation of the options available to the opt-in plaintiffs." (Def.'s Opp'n 22.)  Whatever the merits of Defendant's contention, it has not explained what portion of the section it finds objectionable or what changes should be made. Accordingly, no revisions to this section will be made.

### III.  Conclusion

For the foregoing reasons, Plaintiff's Motion is granted.  Plaintiff's proposed collective action is conditionally certified pursuant to 29 U.S.C. § 216(b).  The claims of the potential opt-in plaintiffs are tolled for the period between November 21, 2016 and the date of this Opinion & Order.  The Proposed Notice is approved with the modifications discussed above.  Defendant shall provide to Plaintiff a computer-readable data file containing the names, last known mailing addresses, telephone numbers, Social Security numbers, work locations, and dates of employment of all potential opt-in plaintiffs.  Defendant shall post the Proposed Notice (with the

25

modifications discussed), along with the consent forms, in each of Defendant's locations where potential opt-in plaintiffs are employed.

The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 28.)

SO ORDERED.

DATED:      June 8 , 2017
            White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE